**Opinion filed January 22, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00116-CV
_____

**STATE OFFICE OF RISK MANAGEMENT, Appellant**

**V.**

**SHAWNAE R. FOUTZ, Appellee**

**On Appeal from the 58th District Court**

**Jefferson County, Texas**

**Trial Court Cause No. A-0175988**

## O P I N I O N

The State Office of Risk Management (SORM) filed suit against Shawnae R. Foutz seeking judicial review of a finding by the Texas Workers' Compensation Commission that she had suffered a compensable injury while working as a correctional officer for the Texas Department of Criminal Justice. The jury found in favor of Foutz. The trial court then sua sponte issued an order requiring SORM and its attorneys to show cause why they should not be sanctioned for filing a frivolous lawsuit. Following the show cause hearing, the trial court sanctioned SORM $100,000, its lead counsel $5,000, and its co-counsel $3,000. We affirm the imposition of sanctions against SORM but reverse the $100,000 sanction assessed and remand for a new hearing to determine the appropriate sanction.

We do not address the sanctions assessed against SORM's attorneys because no appeal was perfected on their behalf.[1] *See Williams v. Colthurst*, 253 S.W.3d 353, 367 (Tex. App.—Eastland 2008, no pet.) (notice of appeal filed by client did not perfect appeal of sanctions assessed against client's attorney because it did not list attorney as an appellant). SORM's counsel stated at oral argument that it was SORM's intent to appeal the sanctions assessed against the individuals as well as itself. However, in addition to the lack of a notice of appeal filed on the individuals' behalf, we note also that SORM's brief was filed solely on behalf of itself, that SORM's appellate attorney is shown solely as counsel for SORM, that SORM's brief lists only Foutz and SORM as parties, and that no argument specific to the individuals was advanced.

## I. *Background Facts*

Foutz was a Texas Department of Criminal Justice corrections officer. On February 14, 2005, she was working the night shift and was assigned to the control area that opens and closes cell doors. Her shift ended at 6 a.m. At about 5:50 a.m., Foutz heard a banging noise and someone saying, "Let me in. Let me in." She turned and saw Inmate Gilbert trying to flee from Inmate Caldwell. Caldwell began stabbing Gilbert. TDCJ policies forbade Foutz from opening the cell door and allowing Gilbert into the control area. Instead, Foutz was required to watch the attack so that she could later identify the participants. Other inmates distracted Caldwell, and Gilbert managed to escape. Foutz was relieved from duty at 6:03 a.m. and was instructed to give a written statement. Five to ten minutes later, she learned that Gilbert had died.

Foutz stayed at work participating in the investigation until 1:00 p.m. She went home and tried to rest but was unable to do so because she kept seeing the event over and over. She called her supervisor and reported having problems. He gave her the Emergency Assistance Program phone

---

[1] The notice of appeal contained no reference to the sanctions entered against the individual attorneys. SORM stated that it:

> [I]ntends to appeal . . . the judgment rendered against Plaintiff, STATE OFFICE OF RISK MANAGEMENT set forth in the Amended Final Judgment of February 28, 2007 and the December 22, 2006 and December 29, 2006 Sanctions Order.

> This Notice of Appeal is filed pursuant to Rule 25.1 of the TEXAS RULES OF APPELLATE PROCEDURE. Security for costs is not required by law, because Plaintiff is an agency of the State of Texas, and is therefore exempt from the requirement of filing a cost bond.

> No attempt to file security for costs was made by the individual attorneys nor was any argument advanced that they too were exempt from this requirement.

2

number, and Foutz scheduled an appointment with Wanda Kendall, a licensed professional counselor. Foutz told Kendall that she was experiencing anxiety and was questioning herself for not preventing Gilbert's death.

Foutz filed a workers' compensation claim. SORM disputed it. At SORM's request, Foutz saw Dr. Edwin Johnstone, a Board Certified Psychiatrist, for an independent medical exam (I.M.E.). He confirmed that Foutz suffered from P.T.S.D. and recommended further treatment. A Texas Workers' Compensation officer conducted a contested case hearing and found that Foutz suffered a compensable mental-trauma injury on February 14, 2005. The TWCC Appeals Panel affirmed. SORM filed suit for judicial review. The jury found for Foutz, and the trial court awarded her $50,717.47 in attorney's fees, costs, and expenses. SORM points out that this is $50 more than she requested, but it is not challenging that award.

The trial court sua sponte ordered SORM and its two trial attorneys to show cause why they should not be sanctioned for filing a frivolous suit. The trial court conducted an evidentiary hearing and, following that hearing, sanctioned SORM $100,000, its lead counsel $5,000, and its co-counsel $3,000 for filing a frivolous suit under TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE ANN. ch. 10 (Vernon 2002).

## II. *Issues*

SORM contends that the sanctions order is invalid, that it violates the Texas Constitution by granting public funds to a corporation for private purposes, and that it does not justify the amount of sanctions awarded.

## III. *Analysis*

### A. *Standard of Review*.

We review the imposition of sanctions under Rule 13 or Chapter 10 for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or when it acts without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). This requires an examination of the entire record. *Loeffler v. Lytle Ind. Sch. Dist.*, 211 S.W.3d 331, 347 (Tex. App.—San Antonio 2006, pet. struck). Any conflicting evidence is viewed in the light most favorable to the trial court's ruling, and all reasonable inferences in favor of that ruling will be

3

drawn. *Id*. at 348. To determine if the sanctions were appropriate or just, the appellate court must ensure there is a direct nexus between the improper conduct and the sanction imposed. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003).

      *B. Sanctions for Frivolous Pleadings.*

Courts presume that pleadings are filed in good faith. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993). But trial courts have the authority to sanction an attorney or party for filing motions or pleadings that lack a reasonable basis in fact or law under Rule 13 and Chapter 10. Rule 13 authorizes the imposition of the sanctions listed in TEX. R. APP. P. 215.2(b). The only monetary sanctions allowed by Rule 215.2(b) are for the opposing party's expenses, attorney's fees, and taxable court costs. Because the trial court's $100,000 sanction was not based upon expenses, court costs, or attorney's fees, it is not authorized by either Rule 13 or Rule 215.2(b), and SORM's first issue is sustained.

Section 10.001 provides:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:
>
> > (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> > (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> > (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> > (4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

4

Consequently, the signer of a pleading or motion certifies that *each* claim, *each* allegation, and *each* denial is based upon the signatory's best knowledge, information, and belief, formed after reasonable inquiry. *Low*, 221 S.W.3d at 615. Each allegation and factual contention in a pleading or motion must have, or be likely to have, evidentiary support after a reasonable investigation. *Id.*

### C. The Sanctions Hearing.

At the conclusion of the trial's first day, the trial court advised counsel that the evidence so far suggested that SORM's position appeared frivolous. After the jury returned with its verdict, the trial court again advised counsel that SORM's position was wholly lacking merit, that it was scheduling a posttrial hearing to enter a judgment, and that at that time it would consider what actions, if any, should be taken to discourage similar frivolous lawsuits. The posttrial hearing was scheduled and conducted. At the conclusion of that hearing, the court advised counsel that it appeared SORM had filed a frivolous suit because of the complete absence of any evidence or law to support its position and that it was entering a show cause order. The trial court instructed SORM's counsel to address whether any consideration was given to the fact that calling Foutz to the witness stand would re-traumatize her and to advise the court who made the decision to prosecute the suit. The show cause order restated the trial court's concern that the suit was frivolous and was unsupported by the facts and law and that no reasonable argument could be made for the extension of existing law.

SORM called its general counsel Stephen Vollbrecht as its sole witness at the show cause hearing. Vollbrecht testified that it was his decision to file suit and that he did so because he did not believe that the hearing officer or appeals panel had addressed the legal standard for mental-trauma claims. Repetitive mental trauma resulting in injury is not compensable under the Workers' Compensation Act. *Transp. Ins. Co. v. Maksyn*, 580 S.W.2d 334, 337-39 (Tex. 1979). Employees may, however, recover for an accidental injury due to mental trauma when there is evidence of an undesigned, untoward event traceable to a definite time, place, and cause. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 610 (Tex. 1999).

Vollbrecht testified that the hearing officer and appeals panel made no finding that Foutz's injury was attributable to a specific time, place, and incident and that, without this finding, it was

difficult to justify not appealing.[2] Vollbrecht conceded in response to the trial court's questions that compensability could have been determined based upon the facts, that he knew what the facts were, and that he knew them prior to the contested case hearing. He also testified that he did not consider whether Foutz would have to testify if an appeal was filed, but SORM's counsel acknowledged that the trial impacted Foutz emotionally and that, but for the lawsuit, she would not have been required to testify.

SORM's counsel offered, and the trial court accepted, excerpts of Dr. Johnstone's deposition testimony into evidence at the start of the show cause hearing. After Vollbrecht's testimony, counsel brought this testimony to the trial court's attention.[3] Counsel argued that Dr. Johnstone's deposition testimony supported the contention that Foutz's injury was due to three separate events rather than one. Dr. Johnstone was deposed after SORM filed suit against Foutz. One could, therefore, question its materiality when the issue is whether the suit was filed in bad faith. Nonetheless, SORM has also asked this court to consider Dr. Johnstone's deposition testimony. Because the trial court admitted Dr. Johnstone's deposition testimony excerpts, we will consider that testimony in our analysis.

In an attempt to establish that Foutz did not actually witness a murder – because the victim was still alive when she last saw him, SORM's counsel asked Dr. Johnstone: "[I]s it not true she did not witness actually a stabbing murder at the time of the incident?" Dr. Johnstone responded:

> There were really three things going on. She's at work at what seems like a routine thing. The shift is about to end, as a matter of fact. Much to her surprise, there's a banging noise and somebody screaming, "Let me in. Let me in. Let me in." She looks and sees that Gilbert is being assaulted by Caldwell. And, so, she sees that.
>
> The second thing is that she's got the switch to the door that he is pleading for her to open. And it's flashing through her mind, "Should I, should I not open – hit the switch to open that so that maybe he could get away from this assault?" And she's running through, "If I were to do that, though, that's breaking a rule about what I was trained to do and told that I must not open that except under certain kind of

---

[2]The hearing officer's findings of fact included the following: "1. On February 14, 2005, [Foutz] was employed by the State of Texas; . . . 6. On February 14, 2005, [Foutz] sustained damage or harm to the physical structure of her body while she was engaged in the exercise of her job duties." The hearing officer's conclusions of law included a determination that Foutz "sustained a compensable mental trauma injury on February 14, 2005."

[3]SORM also offered into evidence an affidavit from Vollbrecht, the hearing officer's decision, SORM's request for review of that decision, the TWCC Appeals Panel decision, SORM's original petition against Foutz, and the jury charge.

requirements." You know, I'm not sure what they are. But, anyway, it was a no-no and –

. . . .

And then the third factor in the thing was the discovery after a bit that the man had died rather than survived the assault.

So, there are really three elements in it, it seems to me.

SORM's counsel later referred to these elements as "those three aspects, those three incidents, for lack of a better word." Dr. Johnstone agreed that they all resulted in Foutz's P.T.S.D. diagnosis. SORM'S counsel passed the witness after this answer, and in response to the very next question, Dr. Johnstone clarified that these three aspects were all part of *one event*.

> Q. All right. [SORM's counsel] used the . . . words "aspects of that event." Do you feel like that the witnessing of the – as he – I'll use his words – "assault," the later discovering of the defendant, which I believe she testified to was fairly quickly – a shorter period of time than 30 or 40 minutes, as well as the feelings of helplessness would be one event or three events?
>
> A. *One event* (emphasis added).

Any lingering confusion about Dr. Johnstone's opinion was addressed in subsequent testimony when, in response to SORM's additional questions, he twice more testified that this was *one event*.

> Q. And that's what I'm wanting to clarify again for the ladies and gentlemen of the jury. So, it wasn't one single event that resulted –
>
> A. *It was one single event*, as I would conceive of it, with a lot of different elements in it.
>
> Q. And the elements you're talking about are, again, the observation of the assault, the guilt, and the later learning that one of the inmates had been killed?
>
> A Those are the three major elements that I –
>
> Q. But you don't –
>
> A. – notice –

7

Q. You don't –

A. – but I'm not saying there weren't other elements.

Q. Okay. You don't consider those three different events?

A. No.

Q. Because?

A. Well, because it was one traumatic experience that happened during the time that she was right on the scene there within her work. *It was one complex event* (emphasis added).

Dr. Johnstone's deposition testimony does not establish a reasonable basis to file suit against Foutz. It disproves that contention because Dr. Johnstone was clear that Foutz's P.T.S.D. was proximately caused by one work-related event. This testimony should have come as no surprise because it was completely consistent with his report. Dr. Johnstone wrote:

> Ms. Foutz was not in mortal danger herself in the event but the ghastly scene of the murder was enough to shock her emotionally. Her sense of being frozen in a position of potential to save the victim, however unrealistic in practical reality, is deeply disturbing in a tenacious way. Her symptoms of repercussions after emotional trauma (PTSD, DSM-IV 309.81) are consistent with the event.

Consequently, Dr. Johnstone never opined that Foutz's P.T.S.D. was proximately caused by repetitive mental trauma. It is worth noting that Dr. Johnstone was well familiar with repetitive mental trauma. He described that condition for the jury, gave them an example of it, and testified that Foutz's condition was "a lot different."

At the conclusion of the show cause hearing, the trial court found that SORM's suit was groundless. The court noted that the determination of compensability could have been made just by examining the facts, that the facts were known, and that Dr. Johnstone opined that this was one event. SORM argues that it was unfairly punished for losing when frivolous suit sanctions are meant only to punish those who should not have brought a case. We agree with this proposition but do not agree that SORM was punished for losing.

8

*D. Did SORM Have a Reasonable Basis for Filing Suit Against Foutz?*

SORM sued Foutz to appeal the decision of the appeals panel. It, therefore, bore the burden of proof. TEX. LAB. CODE ANN. § 410.303 (Vernon 2006). Because SORM contended that Foutz's P.T.S.D. was caused by multiple repetitive trauma, its suit required proof by a preponderance of the evidence that Foutz was exposed to multiple traumatic events. The only evidence SORM proffered the trial court at the show cause hearing of multiple traumatic events was Dr. Johnstone's deposition. As noted, that deposition establishes exactly the opposite.

This case does not present any of the uncertainties typical of litigation. No conflicting evidence was resolved against SORM. It discovered no new evidence after filing suit. No witness failed to appear or testified differently at trial than during a deposition or pretrial interview. SORM does not contend that it was surprised by any evidence or testimony Foutz offered at trial. No witness or testimony was excluded. SORM attempted to play the videotape of Dr. Johnstone's deposition but, because he was present in the courtroom, was required to examine him live. SORM was not prevented from asking Dr. Johnstone any question or from impeaching him with his deposition testimony. The trial court's ruling, therefore, did not alter the testimony the jury heard.

The absence of any evidence to support SORM's principal contention – a contention on which it bore the burden of proof – more than justifies the trial court's frivolous suit finding. *Cf. Armstrong v. Collin County Bail Bond Bd.*, 233 S.W.3d 57, 63 (Tex. App.—Dallas 2007, no pet.) (the mere filing of a petition cannot support an award of sanctions when the party has a statutory right to seek judicial review by trial de novo of an administrative decision revoking his license). Because SORM has identified no evidence or potential evidence to support its multiple event claim, the trial court did not abuse its discretion by finding that SORM filed a groundless suit.

The next issue is whether SORM's suit can be justified as a nonfrivolous request for an extension or modification of existing law. SORM argues that courts have yet to decide whether several causes of mental-trauma injury separated by a relatively short period of time are an ascertainable, single event, and it characterizes this case as one presenting three separate events. Courts have held that mental stress caused by multiple stressors over an extended period of time are not compensable. *See, e.g., GTE Sw.*, 998 S.W.2d at 611 (employees whose distress was caused by multiple actions by their supervisor over a "two-and-a-half" year period of time did not have a

compensable claim); *Olson v. Hartford Accident & Indem. Co.*, 477 S.W.2d 859, 860 (Tex. 1972) (three or four frustrating experiences over a nineteen-day period were not an ascertainable single event). When injuries are caused by a particular exciting event, however, they are compensable. *See, e.g., Bailey v. Am. Gen. Ins. Co.*, 279 S.W.2d 315, 316 (Tex. 1955) (traumatic neurosis suffered by worker on scaffold after almost falling from scaffold and seeing fellow worker fall to his death); *Hood v. Tex. Indem. Ins. Co.*, 209 S.W.2d 345 (Tex. 1948) (traumatic neurosis following single injury to foot and elbow); *Travelers Ins. Co. v. Garcia*, 417 S.W.2d 630 (Tex. Civ. App.—El Paso 1967, writ ref'd n.r.e.) (neurosis after experiencing armed robbery).

Even if we assume that SORM has correctly identified an unresolved issue, this suit does not raise it. Witnessing an attack, learning within minutes that it was fatal, and subsequent feelings of guilt for not preventing the victim's death are not separate causes of mental trauma. They are all directly attributable to a single event: the attack Foutz witnessed. Common sense dictates that learning within minutes that the attack was fatal and feeling guilty for not doing more merely explain the degree of mental trauma she experienced and why it caused her to suffer P.T.S.D. Moreover, because this was supported by Dr. Johnstone and not disputed by any witness, it is the only position supported by the record. Consequently, the trial court did not abuse its discretion by finding that no reasonable argument could be made for the extension of existing law.

SORM next argues that there was no evidence that it had an improper purpose for suing Foutz. The trial court did not abuse its discretion by finding otherwise. The trial court was not required to find Vollbrecht's testimony credible. The court could consider that the only evidence SORM offered to support its argument that Foutz's injury resulted from three separate events established exactly the opposite; that, after SORM asked for and received an I.M.E. confirming Foutz's diagnosis, it continued to contest her claim; and that SORM at least impaired Foutz's treatment by refusing to pay for more than one of Kendall's counseling sessions. The trial court also had the benefit of observing the conduct of the trial. The court noted that Foutz is African-American and that SORM used five of its six peremptory challenges to strike African-American veniremembers.

The court's exercise of discretion is also supported by consideration of the litigation's effect on Foutz. When the trial court advised SORM that it was issuing a show cause order, it told counsel

10

that it wanted someone to address whether consideration was given to the effect the litigation would have on Foutz. The trial court described her as shaking like a leaf while on the witness stand. Vollbrecht initially refused to admit knowing that, if suit were filed, Foutz would be required to testify about the events. SORM's counsel later conceded that Foutz did have an emotional reaction – although she minimized this by saying that it happened during Foutz's attorney's questioning – and she conceded that, if no suit had been filed, Foutz would not have been required to testify. Foutz's reaction should have been expected. Not only are the facts horrific and any trial would necessarily require their recitation, but also the hearing officer's decision and order reflect that Foutz was visibly distraught during the contested case hearing and that she was particularly disturbed by the memory of the expressions on the inmates' faces as they struggled and by the knowledge that she was powerless to assist the victim.

SORM argues that it was respectful of Foutz's feelings during the trial and notes that it limited its questions to her to only twenty pages of the reporter's record but that her counsel's questions spanned sixty pages. Presumably, SORM's contention is that, if Foutz was traumatized further by the litigation, it was her counsel's fault. SORM did call Foutz as a witness, went through the events of February 14, and argued with her over whether she simply saw a fight or something more serious. But even if we disregard this and accept SORM's contention that any trauma Foutz experienced was during her own counsel's examination, SORM's position ignores the fact that, once it decided to sue her, Foutz risked losing her benefits with an adverse jury decision. We cannot fault Foutz's counsel for making sure that the jury understood what had happened, how it had impacted Foutz, and why she was disabled because of it. This does not mean that sanctions are appropriate merely because Foutz was traumatized by being forced to testify. SORM has a right to seek judicial review of an adverse TWCC Appeals Panel decision. So long as it has a reasonable basis for filing suit, this right trumps any anxiety testifying might cause.

Because SORM offered no reasonable basis for its decision to sue Foutz, because the trial court could reasonably find Vollbrecht's testimony unbelievable, and because the impact this litigation would have on her was clearly foreseeable, the trial court did not abuse its discretion by finding that the litigation was filed in bad faith.

11

*E. The Trial Court's Sanctions Order.*

SORM argues that the trial court's sanctions order fails to specify the sanctionable conduct it committed. SORM complains that the trial court's order (1) indicates that it did not carefully reflect on the order, (2) does not inform SORM and its counsel of their sanctionable conduct so as to deter such acts in the future, and (3) does not allow this court to give meaningful appellate review. SORM's first contention is disproved by the record. The trial court did not act hastily or impetuously. It raised its concerns during trial but delayed any action until a posttrial hearing. At that hearing, the trial court reiterated its concerns and announced its intent to issue a show cause order. At the show cause hearing, the trial court allowed SORM to present any argument and evidence it wished, was engaged by asking several questions, and then elaborated on its findings at length after the hearing. *Cf. Armstrong*, 233 S.W.3d at 62 (reversing sanctions and noting that the trial court did not hold a hearing before assessing sanctions for bad faith pleadings and thus it heard no evidence about the underlying facts that supported the award of sanctions). The trial court's decision, therefore, was well considered.

Nor did the trial court fail to inform SORM why it was being sanctioned or prevent this court from reviewing that order. Section 10.005 requires courts to "describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." While Section 10.005 refers to the sanctions order, courts have held that this obligation can be satisfied outside the sanctions order itself. *See, e.g., Univ. of Tex. at Arlington v. Bishop*, 997 S.W.2d 350, 356 (Tex. App.—Fort Worth 1999, pet. denied) (Section 10.005 can be satisfied with separate findings of fact and conclusions of law).

The trial court's sanctions order provides in part as follows:

> On December 18, 2006, a hearing was held ordering the Plaintiff, STATE OFFICE OF RISK MANAGEMENT, and its attorneys, Rodney V. Ruiz and Nelly R. Herrera, of the Attorney General's Office of Texas, to show cause why an order for sanctions should not be imposed by the Court for bringing a frivolous suit, for signing pleadings containing unsupportable factual and legal allegations, and for violation of TRCP 13 and CPRC Chapter 10 and ordered to appear at a hearing on the matter on December 21, 2006.

> After considering the response, evidence, facts, and arguments of counsel, the Court found that the Plaintiff's position on the case was groundless, frivolous, in bad

12

faith, and that it was unsupported by the facts and law and that no reasonable argument could be made for the extension of existing law.

<u>Findings in Support of Sanctions Under TRCP 13 and CPRC Chapter 10</u>

The court makes the following findings in support of the sanctions imposed under TRCP 13 and CPRC Chapter 10 § 10.004:

a. The Plaintiff's Original Petition was signed in violation of TRCP Rule 13 and CPRC §10.001. The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry. The court found that the explanation given at the show cause hearing was non-persuasive, groundless, and lacked merit.

b. The specific acts or omissions for which sanctions are imposed is for bringing a frivolous suit, for signing pleadings containing unsupportable factual and legal allegations, and for violation of TRCP 13 and CPRC Chapter 10.

SORM was on notice from the trial court's comments during trial, after the jury returned with its verdict, and at the entry of judgment hearing that it believed SORM had filed a frivolous lawsuit by contesting a clearly compensable injury. The sanctions order specifically states that SORM had filed a frivolous suit, that SORM's position was groundless, and that Vollbrecht's explanation for why suit was filed was not credible.

To the extent the sanctions order did not adequately explain to SORM that it was being sanctioned for filing a lawsuit with no reasonable basis to do so, the court's oral findings at the show cause hearing should have been illuminating. The court found that there was no controversy about the facts and that the compensability of Foutz's claim could be determined just by examining those undisputed facts. It also stated that SORM's proffered reason for bringing suit, the claim that Foutz was involved in multiple events of mental trauma, was ridiculous. The court noted that SORM's own I.M.E. doctor felt that Foutz's P.T.S.D. was caused by a single event and stated that it had never

13

seen a case with less controversy about what the facts were or less controversy about what conclusions should be drawn from those facts.

The trial court satisfied Section 10.005. SORM was sanctioned for filing a lawsuit challenging Foutz's entitlement to workers' compensation benefits when the facts known to it clearly established that she had suffered a compensable injury. SORM's second issue is overruled.

*F. The Trial Court's Monetary Sanctions.*

The trial court sanctioned SORM $100,000. It ordered SORM to pay $90,000 to the District Clerk of Jefferson County for the use and benefit of the Texas Bar Foundation and to pay $10,000 to Foutz. SORM complains that the payment to Foutz is not authorized by Chapter 10, that the payment to the district clerk for the use and benefit of the Texas Bar Foundation violates the Texas Constitution, and that the sanctions order does not justify the amount awarded. Foutz concedes that it was improper for the trial court to order the payment to her. We need not address the propriety of the $90,000 payment because we agree with SORM that the trial court failed to explain the basis for its decision to impose a $100,000 sanction.

The only restriction on the amount that may be assessed as a sanction under Chapter 10 is that it must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated. *Low*, 221 S.W.3d at 620. The Texas Supreme Court has held that trial courts must explain how they determined that a particular sanction meets this criteria. *Id.* The trial court did not provide its reasoning for assessing a $100,000 sanction in its oral comments at the show cause hearing or in the sanctions order. When a sanction is assessed without providing the basis for calculating the amount, the sanction constitutes an impermissible arbitrary fine. *See Stromberger v. Turley Law Firm*, 251 S.W.3d 225, 226-27 (Tex. App.—Dallas 2008, no pet.). Because the trial court did not provide a basis for its calculation, we cannot affirm its sanction.

SORM's fourth issue is sustained.[4] We reverse the $100,000 sanction assessed against SORM and remand this case to the trial court for further proceedings. The trial court judge has retired since this trial. SORM is, therefore, entitled to a new hearing. Because we have affirmed the

---

[4]This holding makes it unnecessary to address SORM's third issue, and we express no opinion on whether it was appropriate to direct SORM to make a payment to the district clerk for the use and benefit of the Texas Bar Foundation. If, on remand, the trial court determines that a monetary sanction is appropriate, the court has the authority to reconsider the recipient of that sanction.

trial court's determination that SORM filed a frivolous suit, that hearing shall be limited to a determination of the appropriate sanction. We respectfully direct the trial court's attention to *Low*, 221 S.W.3d at 620-21 & n.5 for a description of the potential relevant factors to consider when assessing any sanction.

## IV. *Other Issues*

Regrettably, SORM's conduct before this court has not been in stark contrast to SORM's conduct before the trial court. SORM provided this court with inaccurate descriptions of key testimony. SORM's reply brief accused Foutz of mischaracterizing the testimony when she said that there was no evidence to support SORM's pleadings. To support this allegation, SORM represented that Dr. Johnstone testified in his deposition that three separate events accumulated to cause Foutz's mental-trauma injury.[5] As noted previously, Dr. Johnstone never testified that Foutz's condition was caused by three events but repeatedly testified that her injury was the result of *one event*. Dr. Johnstone did testify that three elements contributed to her injury, but element is not synonymous with event and when his complete answer – which we have quoted in its entirety – is read, it does not support SORM's characterization of that testimony.

SORM also represented to this court that Dr. Johnstone changed his testimony at trial by testifying that Foutz's injury was caused by one long stretch lasting seven or eight hours. SORM did not contend at the show cause hearing that Dr. Johnstone had changed his testimony. Perhaps that is because, when SORM asked Dr. Johnstone during his deposition if more than one aspect or incident resulted in Foutz's P.T.S.D. diagnosis, he responded:

> Okay. Let me see if I can answer that with the best clarity I can.
>
> There was an incident that happened in her work; and the incident involved her caught up in it *for a matter of hours*, actually. She was – by the time she got home, it was 20 hours after she had gone to work. So, this occurred near the end of a shift; but she was caught up in it having to deal with aspects of it for quite a long time – being debriefed by supervisors, doing paperwork that's involved, being

---

[5]Later in its reply brief, SORM represented to this court that "expert testimony supported SORM's theory that Foutz's injury resulted from a string of events and not just one" and cited Dr. Johnstone's deposition testimony. In a letter brief, SORM characterized Dr. Johnstone as "Foutz's own expert" despite the fact that he was the I.M.E. doctor and that SORM was responsible for the I.M.E. SORM then repeated its contention that Dr. Johnstone testified in his deposition that Foutz's injury arose from three separate events, not one single cause. Similarly, in its principal brief, SORM represented to this court that "Foutz's mental-trauma injury was not compensable because, under her own expert witness's testimony, her injury was caused by multiple events." The record reference for this testimony was to Dr. Johnstone's deposition.

15

informed that the man had died, and probably lots of different elements and lots of different factors there. I'm not saying she had to have this, this, and this for it to have been a traumatic event, but I was – I was taking particular note of those particular three elements that were there – or that she reported were there, but I'm not saying if you only had two of those that it could be confirmed that it wasn't her being caught up in a traumatic stress. She was caught up in a traumatic stress according to my understanding of the work experience that she had (emphasis added).

Dr. Johnstone's deposition answer is consistent with his trial testimony.

The discrepancies between Dr. Johnstone's deposition testimony and SORM's description of it are troublesome. Accordingly, a separate show cause order will be issued to afford SORM the opportunity to address this issue.

### V. *Holding*

The trial court's sanction order is affirmed in part and reversed and remanded in part. That part of the order finding that SORM violated Chapter 10 by filing a frivolous lawsuit is affirmed. That part of the order assessing a $100,000 sanction against SORM is reversed, and this case is remanded for further proceedings consistent with this opinion.

RICK STRANGE
JUSTICE

January 22, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

16