**Opinion filed October 8, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00110-CV

_____

## GREAT WESTERN DRILLING, LIMITED, Appellant

## V.

## BILL ALEXANDER, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CV 44,955**

### O P I N I O N

Appellant Great Western Drilling, Limited (herein Great Western) brings this appeal from a take-nothing verdict in its suit against appellee Bill Alexander (herein Alexander). In the suit, Great Western sought to recover damages suffered by it because Alexander allegedly conspired with his client Marilyn Paschal (herein Paschal) to convert certain insurance proceeds it claimed. For reasons we later discuss, we affirm the judgment of the trial court.

A review of the somewhat convoluted history of the events giving rise to this suit is necessary to a proper discussion of the appeal. Originally, Great Western filed suit against Paschal asserting that Paschal had conspired with her husband Alan Paschal, who died on June 23, 2003, to embezzle money from Great Western, which was used to purchase insurance policies issued by Cuna Mutual

Life Insurance Company, Stonebridge Life Insurance Company, and U.S. Financial Life Insurance Company with death benefits totaling $775,096[1] received by Paschal after the death of her husband. Great Western further sought the imposition of a constructive trust on those proceeds.

Later, and in the course of that proceeding, Great Western also sued Alexander and William R. Bowden Jr. (herein Bowden), Paschal's former attorney, for conversion of the proceeds of those policies. Before the trial of the claims against Paschal, the trial court severed the portion of the suit involving Great Western's claims against Alexander and Bowden and ordered a separate trial of those matters. The original suit against Paschal was tried and, on February 5, 2005, resulted in a judgment against Paschal in favor of Great Western.

Later, and before trial of this severed cause, Great Western settled with Bowden, and the case proceeded to trial against Alexander alone. That trial commenced on October 29, 2007, and on November 1, 2007, the case was submitted to the jury on three issues.

In its charge, because of its pretrial partial summary judgment rulings, the trial court instructed the jury that (1) Great Western's stolen funds were used to pay the insurance premiums on the Cuna, U.S. Financial, and Stonebridge policies in dispute in Cause No. 44196 (the other cause); (2) Great Western was the equitable owner of the Cuna, U.S. Financial, and Stonebridge policies; (3) former defendant Bowden collected the Cuna, U.S. Financial, and Stonebridge policies in the amount of $775,096; (4) on September 16, 2003, Bowden delivered proceeds from the policy proceeds to Paschal in the amount of $732,614.15; and (5) Paschal delivered those proceeds to Alexander on September 16, 2003.

The trial court then submitted three questions to the jury for its decision. The first question and instruction submitted was as follows:

> Did Bill Alexander on September 16, 2003 have notice that Great Western was the owner of the life insurance proceeds paid to Marilyn Paschal by Cuna, Stonebridge and U.S. Financial?
>
> You are instructed that the term "Notice" is broadly defined as information concerning a fact actually communicated to a person, derived by him from a proper

---

[1] Two other life insurance policies had been purchased by the Paschals from United of Omaha that provided for a total of $450,000 in death benefits. The proceeds from those policies were interpleaded by the insurer and later collected by Great Western to partially satisfy its judgment against Paschal.

2

source, or presumed by law to have been acquired. Notice may be actual or constructive. Actual notice results from personal information or knowledge, as well as those facts which reasonable inquiry would have disclosed. Constructive notice is notice the law imputes to a person not having personal information or knowledge.

Jury Questions Nos. Two and Three were conditioned upon an affirmative answer to Question No. One. Jury Question No. Two inquired if, on September 16, 2003, or September 22, 2003, Alexander converted personal property of Great Western in the form of the life insurance proceeds paid to Paschal by the life insurance companies. In connection with Jury Question No. Two, the jury was instructed as to the legal definition of the term "convert."

Jury Question No. Three, with an instruction, inquired as to the amount of compensation to which Great Western would be entitled if the jury found a conversion. In accordance with the instruction, because of its negative answer to Jury Question No. One, the jury did not answer Questions Nos. Two and Three.

In pursuing this appeal, Great Western presents five issues for our review. In the first three of those issues, it contends the trial court erred in not granting its motion for judgment notwithstanding the jury verdict because the evidence established as a matter of law that (1) Alexander converted life insurance proceeds belonging to it in the amount of $250,000, (2) Alexander was on "notice" that Great Western was the owner of the life insurance proceeds, and (3) the evidence established as a matter of law that the funds converted by Alexander were in the amount of $250,000 even though the jury did not answer Questions Nos. Two and Three. In support of its contention that it was entitled to a judgment notwithstanding the jury verdict, Great Western also cites and relies upon the trial court pretrial summary judgment ruling that gave rise to the declarations given the jury in the court's charge as being sufficient as a matter of law to entitle it to a judgment notwithstanding the verdict that Alexander had converted funds in the amount of $250,000.

In its fourth issue, Great Western posits that its motion for new trial should have been granted because the jury's answer to Question No. One was so against the great weight and preponderance of the evidence as to be manifestly unjust. In its fifth issue, and in the alternative, it contends that its motion for new trial should have been granted because the trial court erred in admitting the expert testimony of Alexander's witness Steven L. Lee because his testimony included opinions on pure

3

questions of law, lacked relevance, and was unreliable, all of which combined to probably cause the rendition of an improper judgment.

At trial, in addition to Lee's testimony, portions of Bowden's deposition and Alexander's deposition were admitted into evidence, and Alexander also testified in person. Of necessity, the issues presented by Great Western require us to reference some of the pertinent trial evidence.

In the course of his testimony, Alexander averred that he first heard of Alan's death by reading a newspaper account on June 24, 2003. He also said that in the past, and prior to that time, he had drafted a marital agreement for Alan that provided that Alan would obtain a life insurance policy on himself that would pay Paschal one million dollars in the event of Alan's death.

Alexander said that he received two calls from Paschal on September 4, 2003, and met her at his office on September 5, 2003. At that time, Paschal told him that she needed to hire a lawyer because Great Western had sued her. On September 10, 2003, he prepared, and entered into, an employment contract with Paschal. Although the contract provided for the payment to him of an undivided one-third contingent fee "in the funds in dispute in the litigation whereby Great Western Drilling, Limited is attempting to recover the insurance proceeds paid to you and to be paid to you, totaling One Million One Hundred Twenty Five Thousand ($1,125,000.00)," Alexander testified that he had not actually seen any pleadings in the case nor had he seen any evidence to support Great Western's claims. He acknowledged that "he knew there was a dispute." On that day, Paschal gave him a check for a "nonrefundable" attorney's fee of $200,000 and an expense advance of $50,000.

On September 10, Alexander also wrote Bowden, Paschal's criminal lawyer, and said that he had been retained in the civil litigation and that Paschal wanted the money on deposit in Bowden's trust account forwarded to him. He averred that Paschal did not specifically identify the money, and he did not ask her where it came from. On September 16, 2003, Paschal brought him a check for $732,614.51 drawn on Bowden's trust account, which Alexander deposited in his trust account. Because Paschal's earlier check for $250,000 to him had not been honored by the bank as the result of a letter from Great Western, she paid him the $250,000 from the funds in the trust account.

After reviewing Great Western's pleadings in the suit against Paschal, Alexander opined that the pleadings were not to be taken as true until proved and that he owed an obligation of loyalty to Paschal and had no duty to Great Western. He said that Paschal was the named beneficiary under the

4

policies, that he was not aware of anyone who had a superior right to the proceeds, and that she denied to him that she had ever entered into a conspiracy with her husband to embezzle funds or that she had any knowledge of any embezzlement by her husband. He admitted that he did not explore trying to get his fee from other assets that might have belonged to Paschal.

*Discussion*

A trial court may grant a motion for judgment notwithstanding the verdict if a directed verdict would have been proper. TEX. R. CIV. P. 301; *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). However, if the evidence is factually insufficient, as opposed to legally insufficient, the trial court may not grant a judgment notwithstanding the verdict. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 594 (Tex. 1986). A reviewing court reviews a trial court's denial of a motion for judgment notwithstanding the verdict using the same standard by which it reviews a legal sufficiency challenge. *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex. 1986). When a party challenges the legal sufficiency of an adverse finding on an issue as to which he bears the burden of proof, he must demonstrate on appeal that the evidence conclusively established all the vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a matter of law challenge, the court must examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* In conducting its review, the reviewing court must indulge every reasonable inference to support the finding, crediting favorable evidence, if a reasonable jury could have done so, and disregarding contrary evidence unless a reasonable jury could not have done so. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). As long as the evidence falls within the zone of reasonable disagreement, a court may not substitute its judgment for that of the factfinder. *Id.* at 822. A reviewing court must uphold the jury verdict if more than a scintilla of evidence supports the finding. *Garcia v. Ins. Co. of State of Pa.*, 751 S.W.2d 857, 858 (Tex. 1988).

In reviewing a factual sufficiency challenge on an issue upon which the appellant had the burden of proof, the appellant must show that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. The reviewing court must consider and weigh all the evidence and may only set aside a verdict if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and

5

unjust. *Recognition Commc'ns, Inc. v. Am. Auto. Ass'n*, *Inc.*, 154 S.W.3d 878, 889 (Tex. App.—Dallas 2005, pet. denied). The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Jones v. Tarrant Utility Co.*, 638 S.W.2d 862, 866 (Tex. 1982). When enough evidence is before the factfinder that reasonable minds could differ on the meaning of the evidence or the conclusions or inferences to be drawn from that evidence, the court may not substitute its judgment for that of the jury. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988).

### Issues 1, 2, 3, and 4

In argument under its first four issues, Great Western posits that Alexander's right to retain any part of the insurance proceeds was no greater than the right of Paschal if Alexander had knowledge of Great Western's claims to those insurance proceeds even before those claims were adjudicated. It then reasons that there "is no evidence in the record that Alexander lacked notice of facts which reasonable inquiry would have disclosed at the time he received his nonrefundable retainer that Great Western's embezzled funds had been used in the payment of the life insurance premiums." Thus, it concludes that, because Alexander's denial of notice is conclusively negated by the letter agreement with Paschal and his testimony that he knew there was a dispute over ownership of the proceeds, it was entitled to a directed verdict on its conversion claim against him.

That argument requires us to review the duties and obligations of an attorney. That review is important because it would be no exaggeration to say that the existence of a free and untrammeled bar is essential to the existence of a free democracy and to the fundamental protection of the rights of the citizens of such a democracy. Indeed, it has been iterated and reiterated that the public has an interest in "loyal, faithful and aggressive representation by the legal profession." *Maynard v. Caballero*, 752 S.W.2d 719, 721 (Tex. App.—El Paso 1988, writ denied). In pursuing that obligation, an attorney has the obligation and duty of zealously representing his client within the boundaries of the law. *See Bradt v. West*, 892 S.W.2d 56, 71 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Indeed, in the seminal case of *Morris v. Bailey*, 398 S.W.2d 946, 947 (Tex. Civ. App.—Austin 1966, writ ref'd n.r.e.), the court articulated that, in fulfilling his or her duty, an attorney has "the right to interpose any defense or supposed defense and make use of any right in behalf of such client or clients as [the attorney] deemed proper and necessary, without making himself subject to liability in

6

damages." *See also Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex. App.—Fort Worth 1997, writ denied).

Great Western acknowledges and supports the general rule that an attorney has no duty to anyone but his or her client. However, it argues, as with most general rules, there is an exception to this one. For example, it cites *Likover v. Sunflower Terrace II, Ltd.,* 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ), for the proposition that an attorney is liable if the attorney knowingly commits a fraudulent act that injures a third person or if he knowingly enters into a conspiracy to defraud a third person. In that case, the plaintiff had alleged, and a jury found, that the attorney had helped his client in perpetrating a fraudulent business scheme involving the sale of an apartment complex. In this case, there were no pleadings and, indeed, no fact findings by a trier of fact that Alexander had participated in fraud or was engaged in a conspiracy.

Great Western also cites and relies upon the decision by this court in *Ellis v. City of Dallas*, 111 S.W.3d 161 (Tex. App.—Eastland 2003, no pet.). In that case, this court, approving the definition of conversion as "the exercise of dominion and control over property inconsistent with, and in denial of, the true owner or the party having the right of possession," affirmed a trial court judgment against an attorney for the conversion of a workers' compensation settlement he received and deposited in his trust account for his personal injury client. *Id.* at 163-166. However, in that case, we specifically noted that the attorney "was familiar with the workers' compensation laws in effect at that time and knew that the City had the right to recover, to the extent of the workers' compensation payments it had made to or on behalf of [his client], the 'first money' from [his client's] settlement with the third parties." *Id.* at 164-65. That is not the case here. At the time Alexander received the funds in his trust account, there was no such perfected or legal right to the funds in question.

Great Western additionally cites the cases of *Nacol v. Metallic Development Corp.*, 614 S.W.2d 172 (Tex. Civ. App.—Fort Worth 1980, writ dism'd); *McAnelly v. Chapman*, 18 Tex. 198 (1856); and *Oliver v. Chapman*, 15 Tex. 400 (1855), in support of its proposition that Alexander was guilty of conversion. However, those cases are distinguishable. In *Nacol*, again an appeal from a trial verdict, the trial judge made express findings that Nacol had knowingly bought stolen property in the past, that the seller of the metals there in question "may or may not" have told Nacol that they were stolen, that Nacol had invoked the privilege against self-incrimination when asked about his

7

knowledge that the metals were stolen, and that Nacol had advised Metallic that the raising of an award for return of the metals would assure recovery. 614 S.W.2d at 175. The appellate court held that those facts were sufficient to support a finding of notice and willful conversion. *Id.* No such notice facts are shown here.

Both *Oliver* and *McAnelly* were appeals from jury findings and concerned the question whether the evidence was sufficient to support those findings. In *Oliver,* an action to set aside certain deeds from the plaintiff to the defendant, the court noted that evidence such as the plaintiff's feebleness of body and "imbecility of mind," confidential relations between the parties, the absence of any consideration, the "embarrassed state of his affairs," and "his enfeebled condition of body and mind" were sufficient to justify the finding of fraud by the jury. *Oliver*, 15 Tex. at 403. In this case, of course, there are no such findings. In *McAnelly*, the jury had found that McAnelly knew of the plaintiff's claim to the property there in question but "he carried it off and disposed of it." *McAnelly*, 18 Tex. at 199.

Likewise, in *Newton v. Porter*, 69 N.Y. 133 (1877), also cited by Great Western, the trial court expressly found that the defendant's attorneys had actual notice of the theft of the bonds there in question and the use of the proceeds of their sale at the time they received the notes and mortgages. *Id.* at 140. In *Pena v. Toney*, 160 Cal. Rptr. 4 (Cal. 3d Dist. Ct. App. 1979), the court held an attorney was not a bona fide purchaser with respect to an automobile received by him as a fee for representation in a criminal case. The automobile and certificate of title were in possession of the police, and a cause of action could not be maintained for property to which the attorney never acquired title. *Id*. at 7-9. The facts in those cases are distinguishable from those extant here.

To bring a conversion claim, an aggrieved party must have either ownership, possession, or the right to immediate possession of the property. *Crutcher v. Cont'l Nat'l Bank*, 884 S.W.2d 884, 888 (Tex. App.—El Paso 1994, writ denied). As we have noted, at the time it retired to consider its verdict, the jury had before it Alexander's testimony that on September 16, 2003, although he did know of the pending dispute and was employed to represent Paschal, his client was the named beneficiary under the policies and that she had denied to him any participation in embezzlement. Properly charged as to the legal meaning of conversion notice, the jury finding of Alexander's lack

of notice was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

Accordingly, Great Western's first four issues must be, and are hereby, overruled.

*Issue 5*

In its fifth issue, Great Western argues it should have been granted a new trial because Alexander's expert witness Steven L. Lee (herein Lee) expressed opinions on pure questions of law that lacked relevance, were demonstrated to be unreliable, and combined to probably cause the rendition of an improper judgment.

In considering this challenge, we are governed by the standard of review on a trial court's ruling on a motion for new trial, which is whether it abused its discretion in making that ruling. *Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). By virtue of Texas Rule of Evidence 702, expert opinion testimony is admissible if that testimony will assist the trier of fact to determine a fact in issue, provided the expert is qualified as an expert by knowledge, skill, experience, training, or education. TEX. R. EVID. 702. The expert's testimony must also be relevant to the issues in the case and must be based upon a reliable foundation. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex. 2002).

Specifically, Great Western challenges the admissibility of Lee's testimony that Alexander's reading of its pleadings created no duty on his part to Great Western, that it was "impossible" that mere allegations alone could create such a duty, and that retaliatory suits against attorneys were "highly improper." It also reasons that Lee's testimony was not reliable because he had not reviewed the filings in the Paschal case and could not remember if he had reviewed the judgment in that case, the jury charge in that case, or this court's opinion in the appeal of that case. Great Western also references Lee's admission as to his unfamiliarity with cases involving constructive trusts along with his admission that he thought such cases applied to land but had not looked it up.

It is well established that in instances in which the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony. *K-Mart Corp.*, 24 S.W.3d at 360. No

9

witness is authorized to offer an opinion on a pure question of law. *Mega Child Care, Inc. v. Tex. Dep't of Protective & Regulatory Servs.*, 29 S.W.3d 303, 309 (Tex. App.—Houston [14th Dist.] 2000, no pet.). However, an expert witness may offer an opinion on a mixed question of law and fact when a standard or measure is fixed by law and the question is whether the person or conduct measures up to that standard. *Id.*

In contending that the admission of Lee's testimony requires reversal, Great Western places primary reliance upon the rationale espoused by the court in *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 95 (Tex. App.—Houston [14th Dist.] 2004, no pet.). That case involved a suit brought by investors against attorneys who had represented a corporation for securities fraud and other fraud claims. At trial, the jury awarded the investors a substantial money judgment against the attorneys. In the course of the trial, the plaintiffs had called two attorney experts, one of whom was a law professor who specialized in corporate law and the other was a former Texas Supreme Court justice. Each of the witnesses, over objection, testified as to the duties of an attorney to his client. In its review, the appellate court noted that the witnesses had given opinions that were incorrect statements of the law, had given opinions on issues that were not relevant to the matters in dispute, and had given opinions that should not have been admitted into evidence. *Id.* at 97-98. It also noted that the testimony of the two witnesses covered more than eight days, over one-half of the sixteen-day trial time, and that all the other witnesses were fact witnesses or attorney's fee experts. *Id.* at 99-100. It was in view of all this that the appellate court concluded that the admission of the testimony was not only error but probably caused the rendition of an improper judgment. *Id.* at 100.

However, in this case, Great Western had alleged that Alexander, admittedly an attorney representing an opposing party, had violated some sort of duty toward it that entitled it to recover damages and, indeed, questioned Alexander extensively about whether he felt he owed any duty toward it. As contrasted to the duties and obligations owed to his or her client by an attorney, the questions in the *Greenberg* case, the obligations and duties an attorney might owe to the opposing party, if any, are matters distinct from the questions before that court. Because those are questions and matters beyond the jurors' understanding as laypersons, the admission of properly qualified expert testimony to aid the jury is permissible. *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113,

10

119-20 (Tex. 2004); *Kothmann v. Cook*, No. 07-05-0335-CV, 2007 WL 1075171, at *4 (Tex. App.—Amarillo April 11, 2007, no pet.) (mem. op.).

Additionally, we are instructed by Texas Rule of Appellate Procedure 44.1(a)(1) that no judgment should be reversed on appeal on the ground of trial court error unless the error complained of probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1); *see also GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 620 (Tex. 1999). The first question, as submitted to the jury, inquired whether on September 16, 2003, Alexander had notice that Great Western was the owner of the insurance proceeds in question and did not inquire whether Alexander owed Great Western any duty that he had breached. That being so, Lee's testimony as to the duties of an attorney was not as material and closely connected to the question actually submitted to the jury as was the testimony referenced in the *Greenberg* case. Under the record in this case, Lee's testimony was not calculated to cause the rendition of an improper jury verdict. Thus, its admission, even if erroneous, did not probably cause the rendition of an improper jury verdict. Great Western's fifth issue is overruled.

Alexander has also presented two cross-points that he characterizes as additional grounds for affirmance. However, because our disposition of Great Western's issues requires us to affirm the trial court judgment, it is not necessary for us to discuss those cross-points.

*Alexander's Cross-Appeal Point*

In his cross-appeal point, Alexander contends Great Western's lawsuit against him was frivolous and groundless because it lacked both legal and evidentiary support. Thus, he argues, the trial court abused its discretion in failing to modify the judgment to award sanctions against Great Western and/or its counsel.

In his motion seeking the assessment of sanctions against Great Western, Alexander cites and relies upon the provisions of TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(2), (3) (Vernon 2002). Although the parties differ considerably concerning their application, they agree about the rules of law governing the assessment of sanctions,

Rule 13 authorizes the imposition of sanctions if an attorney files an instrument that is groundless and is brought in bad faith or for the purposes of harassment. For the purposes of Rule 13, "groundless" means no basis in law or in fact and not warranted by good faith argument for

11

the extension, modification, or reversal of existing law. Rule 13. To determine if a pleading is groundless, a trial court is to use an objective standard in determining if a party or its counsel made a reasonable inquiry into the legal and factual bases of its claims at the time the pleading was filed. *In re United Servs. Auto. Ass'n*, 76 S.W.3d 112, 116 (Tex. App.—San Antonio 2002, orig. proceeding). The decision whether to impose sanctions is within the trial court's sound discretion, and a court of appeals will not set aside a sanction unless an abuse of discretion is shown. *Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 895 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The trial court is entitled to consider the entire history of the case before it. *Allied Chem. Co. v. DeHaven*, 824 S.W.2d 257, 262 (Tex. App.—Houston [14th Dist.] 1992, no writ). "Bad faith" is not simply bad judgment or negligence but is, rather, the conscious doing of wrong for dishonest, discriminatory, or malicious purpose. *Armstrong v. Collin County Bail Bond Bd.*, 233 S.W.3d 57, 63 (Tex. App.—Dallas 2007, no pet.). Our supreme court has analyzed standards under TEX. CIV. PRAC. & REM. CODE ANN. § 10 (Vernon 2008) by the same standards and presumptions as Rule 13 of the Texas Rules of Civil Procedure. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

Suffice it to say, we have carefully considered the question, and considering the entire history of this case with which the trial court was familiar, we cannot find the trial court abused its discretion in its refusal to award Alexander sanctions. Alexander's cross-appeal point is overruled.

In final summary, all of Great Western's issues are overruled; Alexander's cross-appeal point is overruled; and the judgment of the trial court must be, and is hereby, affirmed.


                                        JOHN T. BOYD
                                        SENIOR JUSTICE


October 8, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Boyd, S.J.[2]

---

[2]John T. Boyd, Retired Chief Justice, Court of Appeals, 7th District of Texas at Amarillo, sitting by assignment.

12