**Opinion filed December 19, 2013**



## In The

# Eleventh Court of Appeals

_____

## No. 11-12-00269-CV

_____

## CYNTHIA L. CLACK, Appellant

## V.

## LARRY WOLLSCHLAGER, Appellee

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM-47,213**

## M E M O R A N D U M   O P I N I O N

Judge Les Hatch entered a Rule 13 sanctions order in which he ordered Cynthia L. Clack, an attorney, to pay $17,670 as a sanction for her conduct in the underlying lawsuit.[1] *See* TEX. R. CIV. P. 13. We affirm.

_____

[1]Claudia Donaldson also represented Kimberly Low Carlson in the underlying lawsuit. Judge Hatch ordered Donaldson, jointly and severally with Clack, to pay the $17,670 fine, but Donaldson did not appeal Judge Hatch's Rule 13 sanctions order.

Clack contends that Judge Hatch, who heard the sanctions motion, entered the order, and levied the fine, abused his discretion when he found her allegations of "trickery and collusion" between opposing counsel and Judge Dean Rucker, the trial judge in the underlying custody case, were groundless and brought in bad faith.

## I. *Background Facts*

### A. *The Underlying Case*

Clack represented Kimberly Low Carlson in a highly contested child custody case between Carlson and her ex-husband, Larry Wollschlager.[2] David R. McClure represented Wollschlager. Carlson and Wollschlager's child suffers from a condition that requires continuous medical care, and given those special health needs, the parental rights and duties, including financial obligations, were highly contested.

Following a settlement in mediation, Judge Rucker signed an agreed order. Judge Rucker appointed Wollschlager and Carlson as joint managing conservators of the child; restricted the child's residence to Midland County, Texas; and gave each parent the exclusive right to designate the child's primary residence within Midland County during his or her periods of possession.

Subsequently, Carlson moved to modify the order and sought to be designated sole managing conservator of the child with no geographic restriction on his place of residence and to make Wollschlager fully responsible for the child's medical expenses. Wollschlager countersued, seeking to be designated as joint managing conservator with the exclusive right to designate the child's primary residence. Carlson requested a jury trial, and the case was placed on the jury docket.

---

[2]Donaldson also represented Carlson and was listed on the pleadings.

Two weeks before the date set for trial, Wollschlager moved to strike the case from the jury docket on grounds that Carlson, in an attempt to taint the jury pool, posted a website that broadcast her view of the child's medical condition. The website contained videos that Wollschlager intended to offer as exhibits. On the website, Carlson solicited donations for the child's health care and Carlson's legal expenses. The trial court instructed Carlson to take the website down, but the trial court denied Wollschlager's motion to strike the case from the jury docket.

When the trial concluded, Judge Rucker submitted a charge to the jury in which it was asked whether the joint managing conservator should be replaced with a sole managing conservator and, if "yes," who should be named sole managing conservator. Next in the charge, Judge Rucker asked the jury, on condition that it answered "No" to the question of whether there should be a sole managing conservator:

    (1)    whether the joint managing conservatorship should be modified so that one parent has the exclusive right to determine the child's primary residence;

    (2)    who that parent should be;

    (3)    whether that parent's right should be limited by a geographic restriction; and

    (4)    what the geographic restriction should be if the jury chose to impose one.

A supplemental charge instructed the jury that the sole managing conservator's rights would be subject to any limitation imposed by the trial court if it found that the limitation would be in the best interest of the child. Carlson did not object to the submitted charge, and neither Carlson's proposed charge nor the charge submitted to the jury addressed whether a geographic restriction should be imposed

on a sole managing conservator's right to determine the primary residence of the child.

After deliberations, the jury found that the previous appointment of joint managing conservators should be replaced with the appointment of a sole managing conservator and named Carlson as the parent who should be appointed as sole managing conservator. Because the jury answered, "Yes," to the question regarding replacement of the joint managing conservators with a sole managing conservator, it reached none of the remaining questions related to a joint managing conservator's right to determine the child's primary residence.

Through her attorneys, Carlson moved for entry of a final order and asked the trial court to provide written instructions and orders or to schedule a hearing to address the issues remaining before the court, including support, possession and access, and any special orders regarding the child's medical care. Wollschlager requested a hearing on nonjury issues and asked the trial court, among other requests, to designate Midland County as the child's county of residence. Wollschlager sent a letter to Judge Rucker and Clack to notify them of his intent to request a geographic restriction and included caselaw to support his request. Again through her attorneys, Carlson responded to Wollschlager's contentions. The letter was signed by Clack and was written on Clack's law office letterhead.

After Judge Rucker heard evidence regarding the outstanding nonjury issues, he issued a letter ruling in which he restricted Carlson's exclusive right to designate the child's primary residence to Midland County and contiguous counties and ordered that Wollschlager pay 100% of the child's health care expenses. According to the ruling, Judge Rucker had examined the Texas Family Code and relevant caselaw on sole managing conservators and jury trials, and he concluded that the Family Code expressly authorizes courts to impose limitations

4

on the sole managing conservator's exclusive rights, including a geographic restriction on the right to determine the child's residence.

In response to Judge Rucker's ruling, Clack prepared, signed, and filed a motion for judgment to conform to the jury verdict. The motion contained the following:

> [Carlson] very respectfully disagrees that a geographic restriction is called for under the facts of this case. However, the fact that the Court prepared a *charge* that gave the jury a question on geographic restriction to answer <u>only</u> should they bypass Question 1 on *Sole Managing Conservator* and <u>only</u> if they went to the Question on *Joint Managing Conservator*, is an erroneous application of the law, giving special treatment to someone who does not reasonably need it.

Clack attached the following footnote to the sentence related to the jury charge: "Further, this rises to the level of trickery on the part of the Court and smacks of collusion between counsel for Larry Wollschlager and the Court."

Thereafter, Judge Rucker notified the lawyers for Wollschlager and Carlson that the case merited further consideration, and he withdrew his letter ruling. In response to Judge Rucker's letter and Clack's allegations of "trickery and collusion," Wollschlager sought sanctions under Rule 13 of the Texas Rules of Civil Procedure.

*B. The Sanctions Hearing*

Judge Hatch was assigned to conduct a hearing on the motion for sanctions. Clack, her co-counsel—Donaldson, Carlson, Wollschlager, and McClure each testified to their knowledge of the circumstances surrounding the allegations. Clack relied on the following evidence, viewed as a whole, to support her allegations of trickery and collusion:

(1) McClure and Judge Rucker sat next to each other at a dinner for family law specialists while this case was on the docket;

5

(2) McClure, two weeks before trial, moved to strike the case from the jury docket on grounds that Clack found implausible;

(3) McClure was frequently seen in the hallway to Judge Rucker's office during trial and had the judge's secretary handle a personal request;

(4) Judge Rucker appeared to know that McClure was going to request a trial amendment after the close of evidence before McClure had done so;

(5) Clack saw McClure and Judge Rucker sitting next to each other at a private dinner with a small group while Clack's post-verdict motion was pending;

(6) Wollschlager paid for 100% of the child's orthotics six days before the court ruled that Wollschlager would be fully responsible for such expenses, although he had never paid more than 50% in the past; and

(7) Carlson received a text message from Wollschlager's former employee that successfully predicted when the court would rule and said that Judge Rucker and McClure were "up to something."

Donaldson testified that she and Clack did not make the allegations in bad faith; rather, the high degree of "familiarity" and "extrajudicial conduct" between McClure and Judge Rucker led to their suspicion of special treatment, trickery, and collusion in imposing the geographic restriction.

Carlson briefly testified to Wollschlager's payment of the child's orthotics. Carlson said that Wollschlager's offer to pay 100% of the bill for the orthotics struck her as unusual because that was the third set of orthotics for the child and Wollschlager had never paid more than 50% of the bills in the past.

Wollschlager testified that he paid for the child's new orthotics out of generosity because Wollschlager suggested that the child receive the treatment and he knew it would cost more money. Wollschlager testified that McClure had never

indicated he had any special relationship with Judge Rucker, and McClure had told Wollschlager he did not know how the judge would rule.

McClure testified that he and Judge Rucker did not engage in any improper conduct and that he was shocked and embarrassed by Clack's allegations. McClure countered Clack's testimony with the following:

(1)     McClure sat at the same table as Judge Rucker, along with eight to ten other family law specialists, at the annual banquet during a seminar for family law specialists, but McClure did not discuss the pending case at the dinner and did not treat Judge Rucker any differently than anyone else at the table;

(2)     McClure had frequently gone into the hallway to Judge Rucker's office to get coffee and had seen other lawyers do the same, and McClure never went into Judge Rucker's private chambers to meet with him alone about the case;

(3)     Based on how the evidence had played out, everyone assumed that McClure had pleaded to have Wollschlager appointed sole managing conservator, but he had not; therefore, he asked for leave to amend the pleadings to reflect the request;

(4)     McClure had dinner with Judge Rucker on a separate occasion as part of a group of eight to ten lawyers who frequently plan dinners together, but McClure never discussed the pending case or any other case with Judge Rucker that evening; and

(5)     McClure did not know that a ruling was coming or what the ruling would be when Clack received the text message from Wollschlager's former employee.

After hearing the evidence, Judge Hatch awarded Wollschlager sanctions in an amount less than his attorney's fees and costs in the prosecution of the motion for sanctions. The court ordered that Clack and Donaldson were jointly and severally liable for the sanctions.

## II. *Issue Presented*

Did the trial court abuse its discretion when it imposed sanctions against Clack after finding her allegations of trickery and collusion between Judge Rucker and McClure were groundless and made in bad faith?

## III. *Standard of Review*

We review a trial court's Rule 13 sanctions order under an abuse of discretion standard. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). The ruling will be reversed only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). In reviewing a sanctions order, we are not bound by a trial court's findings of fact and conclusions of law; rather, we must independently review the entire record to determine whether the trial court abused its discretion. *Id.* There is no abuse of discretion if some evidence of substantive and probative character supports the trial court's decision or if the evidence is conflicting. *Harrison v. Harrison*, 363 S.W.3d 859, 862–63 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *State Office of Risk Mgmt. v. Foutz*, 279 S.W.3d 826, 830 (Tex. App.—Eastland 2009, no pet.). A trial court abuses its discretion if the sanctions imposed are not appropriate and just. *Am. Flood Research*, 192 S.W.3d at 583.

## IV. *Analysis*

Rule 13 authorizes a trial court to impose sanctions against an attorney, a represented party, or both for filing a pleading that is groundless and brought in bad faith or for harassment. *See* TEX. R. CIV. P. 13. To determine whether Rule 13 sanctions are proper, the trial court must examine the facts and circumstances in existence at the time the pleading was filed. *Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.—Austin 2008, pet. denied). In this case, Wollschlager did not allege, and Judge Hatch did not find, that Clack's allegations were for the purpose

8

of harassment; therefore, we limit our review to whether the pleading was groundless and brought in bad faith. *See GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993).

### A. *Whether Clack's Allegations Were Groundless*

"Groundless" means "no basis in law or in fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Great W. Drilling, Ltd. v. Alexander*, 305 S.W.3d 688, 697 (Tex. App.—Eastland 2009, no pet.). The trial court uses an objective standard to determine whether a pleading is groundless and asks whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim. *Id.* at 697–98.

In its order granting the motion for sanctions, Judge Hatch found Clack's allegations to be groundless because (1) Clack neither requested the jury question she complains of nor objected to the charge given to the jury and (2) the Family Code prohibits a jury from deciding whether to impose a geographic restriction on a sole managing conservator's right to designate the child's residence.

Judge Hatch also found that Clack's allegations of "extrajudicial conduct" did not constitute a factual basis for her allegations of trickery and collusion because she knew over two months before the sanctions hearing that Wollschlager wanted the child's residence to be restricted and knew ten days before the hearing that Wollschlager had moved to request such a restriction. According to Judge Hatch, neither Judge Rucker's consideration nor his ruling on the geographic residence restriction for the child, taken alone or in conjunction with Clack's allegations of extrajudicial conduct, provided a factual basis for Clack's allegations of trickery and collusion.

We agree with Judge Hatch's reasoning that Clack's allegations were not grounded in law or fact. The instruction that Clack alleges she was tricked out of requesting would have been erroneous if Judge Rucker had included it in the

charge. Clack's footnote in which she accused Judge Rucker and McClure of trickery and collusion was attached to a sentence denoting Judge Rucker's failure to instruct the jury to consider a geographic restriction in connection with a sole managing conservator's right to designate the child's primary residence. But the plain language of the Family Code prohibits a jury from determining whether to place a geographic restriction on a sole managing conservator's right to designate the primary residence of the child; a jury may place a geographic restriction on the right to designate the primary residence of the child only regarding a joint managing conservator. *See* TEX. FAM. CODE ANN. §§ 105.002(c), 153.132 (West 2008); *Messier v. Messier*, 389 S.W.3d 904, 915 n.3 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Furthermore, there is evidence that Clack had knowledge of the foregoing law when she signed the pleading at issue. McClure filed, and duly served upon Clack, a trial brief in which he referred to the relevant portions of the Family Code and in which he analyzed their application to the jury instruction at issue in this case. However, Clack made no argument against McClure's analysis, never requested the instruction of which she complains, and also failed to object to the charge that Judge Rucker gave to the jury. Clack admitted that it was not proper to ask a jury whether a geographic restriction should be imposed on a sole managing conservator. She failed to present any legal argument for the extension, modification, or reversal of that existing law. Therefore, Clack's allegations were not grounded in law or fact insofar as they related to Judge Rucker's submission of the jury charge.

In her brief, Clack claims that the allegations of trickery and collusion were not limited to Judge Rucker's preparation of the jury charge but also applied to his imposition of a geographic restriction on the child's residence. However, regardless of whether the allegations refered to the geographic restriction itself or

10

were limited to the absence of a jury instruction, every piece of evidence to support Clack's claim was readily controverted by McClure at the hearing on the motion for sanctions and was not indicative of any actual impropriety.

Clack admitted that she was merely suspicious of Judge Rucker's and McClure's actions and that she had no direct evidence to prove the existence of collusion or trickery. At a minimum, Clack should have inquired further by raising her concerns with Judge Rucker or McClure rather than filing a written motion in which she accused them of committing serious disciplinary violations. After reviewing the evidence upon which Clack relied, we conclude her allegations rest on highly circumstantial evidence that fails to demonstrate that Judge Hatch acted arbitrarily or unreasonably when he found that Clack did not reasonably inquire into the legal and factual basis of her claim. We cannot say that Judge Hatch abused his discretion when he found Clack's allegations were groundless.

## B. Whether Clack Acted in Bad Faith

A party acts in bad faith when he is on notice, through discovery or other information, that his understanding of the facts may be incorrect and he does not make reasonable inquiry to ascertain the facts before he files a pleading alleging them. *Robson*, 267 S.W.3d at 407. Bad faith is not bad judgment or negligence; bad faith requires conscious wrongdoing for dishonest, discriminatory, or malicious purposes. *Great W. Drilling*, 305 S.W.3d at 698. Improper motive is an essential element of bad faith. *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 193 (Tex. App.—Texarkana 2011, no pet.); *Robson*, 267 S.W.3d at 407. Courts must presume that pleadings are filed in good faith, and the party moving for sanctions must overcome this presumption. *GTE Commc'ns*, 856 S.W.2d at 730–31.

Judge Hatch found that Clack acted in bad faith because the allegations, if true, would have constituted a violation of the Texas Disciplinary Rules of

11

Professional Conduct and the Code of Judicial Conduct, which Clack would have had a duty to report. According to Judge Hatch's order on the motion for sanctions, Clack's lack of action in failing to report the improper conduct or to discuss the allegations with Judge Rucker indicates a lack of conviction in the truthfulness of the allegations. The allegations were gratuitous, lent nothing to the legal arguments, and did not make the motion more persuasive. As a result, Judge Hatch concluded that the allegations were made in bad faith because Clack made them to intimidate Judge Rucker and to malign his and McClure's integrity.

Although Clack and Donaldson testified at the hearing on the motion for sanctions that Clack's allegations were not made in bad faith and that her intent was not dishonest or malicious, a party cannot avoid Rule 13 sanctions by claiming she was not acting with malicious or discriminatory purposes in bringing the claim; nor can a party avoid Rule 13 sanctions by claiming she was not actually aware of the facts that made her claim groundless when she has not made a reasonable inquiry. *See Monroe v. Grider*, 884 S.W.2d 811, 819 (Tex. App.—Dallas 1994, writ denied).

Clack asserted a groundless allegation of collusion and trickery against Judge Rucker and McClure, and she did not raise her suspicions to Judge Rucker before she made the serious allegations in a written motion. There is evidence that Clack ignored existing law that rendered her allegations inconsequential. Clack's failure to reasonably inquire into the facts supporting her claim of collusion before she filed a motion that contained those allegations supported Judge Hatch's finding of bad faith.

In addition, Clack's decision to insert an allegation of improper conduct by the trial court and opposing counsel into a footnote within a post-verdict motion is the improper vehicle by which to raise the issue. Ethical violations are to be dealt with as part of the grievance procedure established for dealing with unethical

12

conduct. *See Pannell v. State*, 666 S.W.2d 96, 98 (Tex. Crim. App. 1984). Clack argues that she purposefully did not initiate formal grievance procedures in an effort to establish the absence of bad faith. To the contrary, Clack's argument demonstrates the gratuitous nature of the footnote and a lack of conviction in the truthfulness of the allegations.

Clack could have moved for judgment to conform to the jury verdict without making the serious and groundless allegations that Judge Rucker and McClure engaged in collusion and trickery. *See Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 809–10 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (upholding Rule 13 sanction order against attorneys who made gratuitous allegation of improper conduct in post-verdict motion). Under these circumstances, we cannot conclude that the trial court's finding of bad faith was a clear abuse of discretion. We must now ensure that the sanctions imposed were appropriate and just. *See Am. Flood Research*, 192 S.W.3d at 583.

*C. Whether the Sanctions Imposed Were Appropriate and Just*

A trial court abuses its discretion if it imposes sanctions that are not appropriate and just. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). To be appropriate and just, there must be a direct nexus between the offensive conduct and the sanction imposed, and the sanction must not be excessive. *Id.*; *State Office of Risk Mgmt.*, 279 S.W.3d at 830.

The sanction imposed upon Clack required her to pay $17,670 to McClure to reimburse him, in part, for the attorney's fees and costs incurred in prosecuting his motion for sanctions. Clack contends that the sanctions order fails the appropriateness requirement because it was excessive.

Rule 13 authorizes sanctions as are available under Rule 215.2(b), which includes attorney's fees. *See* TEX. R. CIV. P. 13, 215.2(b). Sanctions awarded as attorney's fees fall within the sound discretion of the trial court, and other courts of

appeals in Texas have held that proof of the reasonableness and necessity of attorney's fees is not required when the fees are assessed as sanctions. *Olibas v. Gomez*, 242 S.W.3d 527, 535 (Tex. App.—El Paso 2007, pet. denied); *Glass v. Glass*, 826 S.W.2d 683, 688 (Tex. App.—Texarkana 1992, writ denied) (citing *Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex. 1984)).

In his order on motion for sanctions, Judge Hatch found there was a direct relationship between the sanction imposed and the offensive conduct because the attorney's fees awarded to Wollschlager were incurred by him because of Clack's allegations of trickery and collusion. Judge Hatch found that the sanction was not excessive because Clack was ordered to pay a portion of Wollschlager's fees and costs, which the court found to be reasonable and necessary, for the filing and prosecution of the motion for sanctions.

We find no abuse of discretion in Judge Hatch's findings. Given that the award was limited to a portion of the attorney's fees incurred as a result of Wollschlager's prosecution of the motion for sanctions, there was a direct nexus between the sanction imposed and the offensive conduct. Moreover, Clack has failed to demonstrate that the award was excessive. Before arriving at the sanction amount, Judge Hatch heard McClure testify that he charged $300 per hour and spent sixty-two and one-half hours on the motion for sanctions and the hearing. The sixty-two and one-half hours included travel between El Paso and Midland, trial preparation, review of the testimony, and preparation of pleadings. McClure also had two paralegals work on the case for thirty-eight hours at a rate of $90 per hour. Donaldson testified that her rate was $350 an hour; she had been practicing law for less than nine years, while McClure has been licensed since 1971.

Clack makes the argument that McClure and his staff spent an excessive amount of time preparing and hearing the motion for sanctions, which essentially is a reasonableness and necessity argument. In *Glass v. Glass*, the Sixth Court of

14

Appeals upheld a sanction without any evidence of reasonableness and necessity of attorney's fees, while the Second Court of Appeals, in *Stites v. Gillum*, upheld an award for fees that was less than the amount incurred by the attorneys. *Stites v. Gillum*, 872 S.W.2d 786, 796–97 (Tex. App.—Fort Worth 1994, writ denied); *Glass*, 826 S.W.2d at 688. The total cost of the attorney's fees for McClure was $18,750, while the cost for his paralegal work was $3,420 for a total of $22,170. At the end of the sanctions hearing, the court awarded $17,670 as a sanction against Clack and Donaldson. The sanctions imposed by Judge Hatch were in an amount less than the total of attorney's fees and costs due to McClure in connection with the sanctions proceedings.

In light of the testimony of Donaldson's rate and the testimony of McClure and the award by the trial court of less than the amount of attorney's fees and costs incurred by McClure, and given the lack of any contrary evidence, we cannot hold that the amount awarded as sanctions was excessive. *See Werley v. Cannon*, 344 S.W.3d 527, 534–35 (Tex. App.—El Paso 2011, no pet.) (upholding sanctions order for attorney's fees based on testimony of trial counsel). We conclude that the sanctions against Clack were appropriate and just and that Judge Hatch did not otherwise abuse his discretion when he entered the sanctions order. We overrule Clack's sole issue on appeal.

V. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

December 19, 2013                                    JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

15