Marvin P. BOND, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–03–00599–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 16, 2004.

Rehearing Overruled Oct. 25, 2004.

---

Anthony M. Fisch, Law Office of Anthony M. Fisch, R. Scott Shearer, R. Scott Shearer, Esq., Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, Bridget Holloway, Asst. Dist. Atty.–Harris County, Houston, for State.

Panel consists of Justices NUCHIA, HANKS, and HIGLEY.

## OPINION

SAM NUCHIA, Justice.

Appellant, Marvin Bond, appeals the trial court's denial of relief on his pretrial application for a writ of habeas corpus seeking relief from double jeopardy. We affirm.

## BACKGROUND

Appellant was indicted for the felony offense of driving while intoxicated. On July 29, 2002, which was the fourth day of his jury trial, appellant's counsel, Anthony Fisch, informed the trial court that the next witness needed an interpreter. After first claiming that he had previously asked the court for an interpreter, Fisch admitted that he had not, and the court told Fisch to find one. The court then informed all parties that they were to be prepared the following day to proceed with the punishment phase of the trial and to have all necessary witnesses present in the event that the jury's deliberations on guilt-innocence concluded quickly. The court announced that court would begin the next day at 8:00 a.m.

Fisch did not show up at court on July 30. At about 10:00 a.m., Mr. Sattlewhite from Fisch's office appeared at court and stated that Fisch had called him at 6:30 a.m. and had said he was extremely ill, but that Fisch had not asked him to inform the court of the illness. The court issued a writ of attachment and a show-cause order for Fisch, and two deputies[1] found Fisch's home address and went there to serve the writ at about noon. They spoke to Fisch's wife, who said that Fisch was not at home.

The court coordinator testified that, while the deputies were at Fisch's house, Fisch called her and told her that he was sick, that he was at a "colonic place," and that he had a doctor's appointment at about 3:40 that afternoon. Fisch would not tell her the name of the doctor he was intending to see. Fisch said that the deputies were at his house, that his wife and children were crying, and that they (the court personnel) were "a bunch of Natzis." The coordinator asked Fisch why, if he could drive around to other places, he could not come to court. He responded that he was sick and was not going to come there. The assistant district attorney noted, on the record, that the witness who, according to Fisch, was scheduled to testify on that day had not shown up at the court.

In response to the trial court's questions, appellant stated that he had not had any contact with Fisch, he had tried to contact Fisch and had left messages for him, he had left the court's telephone number as well as his own cell phone number on Fisch's answering machine and had

---

1. Although the record is not clear, it appears that two deputies attempted to serve the writ of attachment and show cause order on Fisch.

asked Fisch to contact him, and he had not heard from Fisch.

One of the deputies testified that he was at Fisch's home from 1:00 p.m. until 2:15 p.m. in an attempt to serve the writ of attachment and show-cause order. During that time, he spoke to Fisch on the telephone, and Fisch said he would be at his house in about 10 minutes. The deputy spoke to Fisch two or three times between 1:00 o'clock and 2:15, and Fisch promised to come to his house, but never did.

When court resumed on July 31, Fisch did not appear, but he was represented by Mr. Mitcham, who said he understood that Fisch was still ill. Mitcham offered faxed copies of a letter from a doctor and some medical records, which he acknowledged were difficult to read. The court did not admit these documents into evidence because they were not authenticated.

Appellant told the trial court that he had talked to Fisch for about three minutes the previous evening. They did not talk about the case, but Fisch asked whether the court had said anything in front of the jury and whether the court was upset. Appellant said that Fisch complained that "they" were harassing his family. The court explained to appellant that it could not remove Fisch as counsel because appellant had retained Fisch, but that the court could appoint an attorney to explain appellant's options to him under the circumstances. Appellant said he would like to do that, and the court appointed an attorney, Ms. Miller, for appellant for the sole purpose of advising appellant as he decided how he wanted to proceed.

After a recess, the court stated several options that were available to appellant, including the option of sending the jury home and asking them to return the next day, when it could be determined whether Fisch would appear. Because appellant had had only one three-minute conversation with Fisch since the time that Fisch had claimed to be ill, and that conversation, according to appellant, did not include anything about the case or any advice about how to proceed, the court said, "It appears to this Court that he has abandoned you as a client." When asked what he wanted to do, appellant said, "Well, I can't proceed with him. I don't want to proceed with him. I don't think I can get a fair trial. The jury probably knows by now. If they don't, they have some kind of idea. So I have nothing else to do." Appellant also told the court about a previous instance in which appellant had flown to Houston from Seattle, Washington for a court appearance and Fisch did not appear, claiming to be ill. This caused appellant to incur additional expenses because he had to change his return ticket so that he could be in court the following day. The following then occurred:

THE COURT: All right. . . . I just want to make doubly sure. You are requesting me to declare a mistrial. Ms. Miller has explained to you what a mistrial is . . . . Do you understand what that means?

[APPELLANT]: Yes, Ma'am.

THE COURT: Then I'll allow you to fire Mr. Fisch. Is that what you want?

[APPELLANT]: Yes, ma'am.

. . . .

THE COURT: I don't want to put words in your mouth. I want you to tell me what you want.

[APPELLANT]: I cannot continue with him. I can't use him as a lawyer.

THE COURT: What do you want me to do with this jury?

[APPELLANT]: I don't believe they can be fair toward me or anybody in my situation as it stands right now.

THE COURT: Are you requesting to declare a mistrial?

[APPELLANT]: Yes, ma'am.

The court then found that the mistrial was not due to any act of the prosecution, but was based solely on the conduct of Fisch, who had abandoned appellant as a client. The court observed that the jury was angry and concluded that there was no way to know how that might affect the trial. Because appellant had been laid off from his job and had spent his savings to hire Fisch, the court appointed Ms. Miller to represent appellant in the DWI case.

Approximately one month later, appellant filed a pretrial application for writ of habeas corpus seeking relief from double jeopardy. Appellant contended that the mistrial was caused by the intentional and/or reckless conduct of the court by coercion, duress, and intimidation. Appellant argued that a second prosecution of the cause would constitute double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution.

The court issued the writ of habeas corpus and held a hearing on the matter. At the hearing, Fisch testified that, on the sixth day of appellant's trial, Fisch woke up feeling nauseated, throwing up, and having cold sweats. He said that he went to the emergency room of a hospital and also went to a doctor. He stated that he was unable to attend the trial that day or the next and that he learned that a mistrial had been declared while he was ill. He also testified that he was still the attorney of record on the case.

The trial court asked appellant whom he had wanted to be his attorney in the trial, and appellant testified that, when Fisch did not show up in the courtroom, he was very confused. Appellant said that he did not recall whether he had had any say over whether a mistrial had been declared. When asked whether he had wanted the impaneled jury to continue on his case, he said he could not answer that and had

been "really confused." He then agreed, in response to questions by the court, that he would have been happy to continue with Fisch and had wanted the same jury to continue to the conclusion of the case. Under cross-examination, appellant clarified that he thought that, if the events leading up to the mistrial had not happened, he could have got a fair trial. The court denied the requested relief.

## DISCUSSION

In his sole issue, appellant contends that the trial court erred in denying the requested habeas corpus relief because double jeopardy bars a retrial of his case. Appellant argues that jeopardy attached when the jury was impaneled, and that he did not effectively consent to the mistrial because he was not represented by counsel at the time he consented.

### Standard of Review

■ A trial court's ruling in a habeas corpus proceeding should not be overturned absent a clear abuse of discretion. *Ex parte Ayers*, 921 S.W.2d 438, 440 (Tex. App.-Houston [1st Dist.] 1996, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990). In determining whether a court has abused its discretion, we view the evidence in the light most favorable to the trial court's ruling. *Crow v. State*, 968 S.W.2d 480, 482 (Tex.App.-Houston [1st Dist] 1998, pet. ref'd).

### Double Jeopardy

■ The Fifth Amendment of the United States Constitution prohibits the State from putting a person in jeopardy twice for the same offense. U.S. CONST. amend V. In a jury trial, jeopardy attaches when the jury is impaneled and sworn.

*Crist v. Bretz,* 437 U.S. 28, 37, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978); *Ex parte Herron,* 790 S.W.2d 623, 624 (Tex.Crim. App.1990). An exception to this rule exists if the defendant consents to a retrial or if a retrial is mandated by manifest necessity. *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *Ex parte Little,* 887 S.W.2d 62, 65 (Tex.Crim.App.1994). Manifest necessity is not an issue in this case because appellant requested a mistrial. Therefore, we must determine whether, in spite of his request, appellant did not give his effective consent to the mistrial.

■ Appellant's contention that he was not represented at the time he requested a mistrial is not supported by the record. The record reflects that the trial court appointed counsel to advise appellant regarding the effect of a mistrial and the options available to appellant. The trial court asked appellant on the record wheth-

er counsel had explained that a mistrial meant that the jurors would be excused and the case would start over as if there had been no trial. Appellant responded, "Yes, ma'am." Thus, the record establishes that appellant was represented by counsel at the time he requested the mistrial.

■ Appellant contends that the trial court "provoked and prodded" appellant into requesting a mistrial and that the trial court created "a coercive and threatening environment." [2] Appellate counsel has again misrepresented the record. The trial court scrupulously honored appellant's right to counsel and to be informed of what was occurring. Trial counsel's conduct showed an egregious disregard for the welfare of his client. Furthermore, appellate counsel's characterization of the trial court, including "despotic" and "erratic and irrational," is offensive to this Court.[3] We conclude that the trial court

2. Appellant complains about the following actions of the trial court:

1. Holding Fisch in contempt for failing to provide an interpreter. (In fact, the trial court held Fisch in contempt for being argumentative, including stating repeatedly that he had informed the court that he would need an interpreter before admitting that he had not.)
2. Holding Fisch's legal assistant in contempt for failing to cooperate with the court in finding Fisch.
3. Sending deputies to Fisch's home with a writ of attachment.
4. Telling appellant that Fisch was evading the writ. (In fact, the trial court said, "I think he's evading them." The deputy's testimony confirmed the court's opinion.)
5. Stating that Fisch had abandoned appellant. (The court's statement, "It appears to this court that he has abandoned you as a client," was based not only on Fisch's failure to appear in court, but also on his failure to contact appellant.)
6. Expressing doubts about the authenticity of Fisch's medical records. (The records were not authenticated; someone had merely

faxed copies to Fisch's attorney, who did not attempt to authenticate them.)
7. Informing appellant that Fisch did not call the court, when he did. (Fisch called the court coordinator only after the deputies went to Fisch's home with a writ of attachment. He would not state where he was or where he was going.)
8. Informing appellant that the jurors were angry at him for the delay. (In fact, the court did not say the jurors were angry *at appellant*.)
9. Informing appellant that, unless a mistrial was declared, the court would appoint counsel to take over the case mid-trial after a 10–day delay to allow new counsel to learn about the case. (This is not true. Among the options mentioned by the court was the possibility of bringing the jury back the next day and seeing whether Fisch appeared.)

3. Counsel's argument goes beyond the limits of zealous advocacy. He has misrepresented the facts, distorted the record, and falsely accused the trial court of highly unprofessional and unethical conduct. In our opinion, counsel's statements exceed the very broad scope of permissible argument set forth in

did not abuse its discretion in denying appellant's requested relief.

We affirm the ruling of the trial court.

rule 3.01 of the Texas Disciplinary Rules of Professional Conduct. *See* Tex. Disciplinary R. Prof'l Conduct 3.01, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex State Bar R. art. X, § 9).