# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00344-CR

**Jorge Mendoza, Jr. aka George Mendoza, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 64,862, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jorge Mendoza, Jr. of two counts of indecency with a child, found that two enhancement paragraphs alleging sexual assault of a child and indecency with a child were true, and sentenced him to life imprisonment. *See* Tex. Penal Code § 21.11(a). The trial court signed two judgments in accordance with the jury's determinations and set the life sentences to run consecutively. On appeal, he complains that the mandatory life sentence is a violation of his rights under the federal and state constitutions, that the evidence is legally insufficient to show that he exposed his genitals, that the jury charge contained egregious error because it did not define what it means to be "legally married," that the evidence did not prove that Mendoza had committed the prior crimes used for enhancement, and that the evidence showed he lacked the required mens rea because he believed he was married to the victim. We affirm the trial court's judgments.

**Background**

Because the factual and procedural background of the cause are well-known to the parties, we will not recite them in great detail in this opinion. *See* Tex. R. App. P. 47.1 (appellate court opinions should be as "brief as practicable" in addressing issues necessary to final disposition), 47.4 (memorandum opinions should be "no longer than necessary to advise the parties of the court's decision and the basic reasons for it"). The record reflects that in 2009, the victim, B.A., was thirteen years old. She began communicating with Mendoza in an online chat room and then via texts on her cellular phone. B.A. told Mendoza her age, and Mendoza, who was thirty-two, told her he was in his twenties. The communications quickly became sexual, Mendoza sent videos and photos of himself naked and masturbating, and B.A. sent photos of herself, some of which showed her unclothed.

Eventually, B.A. sent Mendoza a text message that she was home alone and wanted to see him. B.A. testified that when Mendoza arrived, he immediately began kissing and touching her. Although she thought it was "a little weird" and was uncomfortable because she "didn't want to be in that situation," she did not say anything and instead "just hugged him back." She thought it was strange because "I didn't plan to do anything like that. He just said we were going to like watch movies or something." B.A. testified, "I don't know what to do so I just went along." Mendoza touched and sucked on her breasts, rubbed his penis against her body over her clothes, and then pulled his pants down and placed her hand on his penis. Mendoza had just told B.A. that he wanted her to suck on his penis when her mother's boyfriend arrived home and interrupted the pair. After a brief struggle, Mendoza fled.

2

During the punishment phase, two women testified that when they were fifteen, they met Mendoza online and that their communications with him quickly became sexual. One of the women lived in Pennsylvania and never met Mendoza in person but said she talked to Mendoza via webcam and that he was usually naked, frequently masturbated, and often asked to see her naked. The other woman testified that she eventually agreed to meet with Mendoza in person, thinking they would go for a walk or a ride. Instead, he began making sexual advances and, when she resisted, he sexually assaulted her. The State introduced into evidence two orders of deferred adjudication related to those two minors, one finding that Mendoza had pled guilty to sexual assault of a child and the other that he pled guilty to indecency with a child. Mendoza was placed on ten years deferred adjudication for those two charges. Mendoza's probation officer testified that as far as she knew, as of the date of trial, Mendoza's deferred adjudications had not been revoked and he had not yet been convicted of those two offenses.

**Discussion**

Indecency with a child by contact is a second-degree felony, and indecency by exposure is a third-degree felony. Tex. Penal Code Ann. § 21.11(a)(1) (indecency by contact), (a)(2) (indecency by exposure), (d) (explaining punishment levels). If a defendant is convicted of a felony under section 21.11, he shall be sentenced to life imprisonment if he was previously convicted of indecency with a child or sexual assault. *Id.* § 12.42(c)(2). For purposes of section 12.42(c)(2), a person is considered to have been "previously convicted" of an offense under 21.11 if he "entered a plea of guilty or nolo contendere in return for a grant of deferred adjudication." *Id.* § 12.42(g)(1).

Mendoza argues that the automatic life sentence violates constitutional prohibitions

against cruel and unusual punishment. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. However, we have held that "mandatory life imprisonment under the Texas recidivist statute has been upheld by the Supreme Court," and section 12.42(c)(2), which provides for mandatory life sentences for non-aggravated sexual assaults, "does not violate article I, § 13 of the Texas Constitution." *Jones v. State*, No. 03-99-00610-CR, 2000 Tex. App. LEXIS 7558, at *11 (Tex. App.—Austin Nov. 9, 2000, pet. ref'd) (mem. op., not designated for publication) (citing *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)); *see also Duran v. State*, 363 S.W.3d 719, 723-24 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (habitual-offender statute does not violate state or federal constitutions); *Moore v. State*, 54 S.W.3d 529, 541 (Tex. App.—Fort Worth 2001, pet. ref'd) (same).

As for whether the life sentence is disproportionate to the offenses committed, we disagree. *See Moore*, 54 S.W.3d at 541-42 (in considering whether sentence is disproportionate, court should compare gravity of crime to severity of sentence). When comparing Mendoza's crimes to the sentences, we are unpersuaded that the sentences are disproportionally severe. While on deferred adjudication for two similar offenses, Mendoza again struck up a relationship with a child he knew was thirteen, lied about his age, sent videos of himself naked and masturbating, went to her house when he knew she was alone, made sexual advances despite having told her they would just watch a movie, and was attempting to have her perform oral sex on him when they were interrupted. Earlier, he sexually assaulted a fifteen-year-old child, and he exposed himself to her and another minor after forming online "relationships" with those children. The record indicates that Mendoza has a history of seeking out young girls online, exposing himself and sending lewd videos and

4

photos, and, when they are in the same geographical area, attempting to make sexual contact with them. We overrule Mendoza's first and second issues.

Mendoza next argues that the evidence is legally insufficient to prove that he exposed and caused B.A. to touch his genitals, arguing that none of the witnesses saw his penis; that B.A., when asked how she knew that Mendoza was rubbing his penis against her body, said "I didn't know how, I just know"; and that B.A. "thought she touched his belt buckle." However, B.A.'s statement that she thought she felt Mendoza's belt buckle came from Richard Sabourin, the police officer who testified about B.A.'s report of the night's events. Sabourin testified that B.A. told him that Mendoza "pressed his penis against her through his clothing. At first—stated first she thought it was his belt buckle and realized what it was and went kind of in shock." He also testified that B.A. told him that Mendoza "unzipped his pants, took his penis out, took one of her hands—she didn't indicate which one—and placed her hand on it." At trial, B.A. testified that he "put[] my hand on it" and that it felt "soft but hard at the same time." She also testified that "[h]is pants were like to his ankles."[1] The evidence clearly supports a finding that Mendoza exposed his genitals and engaged in sexual contact with B.A.

---

[1] In his presentation of this issue, as well as issues four and six, counsel comes perilously close to misrepresenting the evidence and pressing issues that are patently frivolous. *See Bond v. State*, 176 S.W.3d 397, 401 n.3 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (counsel exceeded "limits of zealous advocacy" by misrepresenting facts and distorting record); *see also* Tex. Disciplinary Rules Prof'l Conduct R. 3.01, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous."); *Houston v. State*, 286 S.W.3d 604, 612 (Tex. App.—Beaumont 2009, pet. ref'd) (counsel "is expected to provide the Court a fair and accurate understanding of the facts and the applicable law, and must not misrepresent, mischaracterize, misquote or miscite the facts or the law").

In his fifth issue, Mendoza argues that the evidence presented at punishment did not show he was the same person convicted of the prior offenses because only his probation officer testified and there was no fingerprint evidence or testimony by someone present at the prior conviction. We disagree with Mendoza and concur with the State's analysis of this issue, which likens the process of linking a prior conviction to a defendant to the process of putting together a "jigsaw puzzle." *See Flowers v. State*, 220 S.W.3d 919, 923 (Tex. Crim. App. 2007). Two witnesses testified about Mendoza exposing himself to them online when they were minors, and one of them testified that he went on to sexually assault her when they met in person. Mendoza's probation officer testified that he was on probation for ten years for sexual assault of a child and for indecency with a child. She testified that the cause numbers on the two orders of deferred adjudication offered by the State were the same cause numbers for which Mendoza was on probation. The State sufficiently established that the two alleged prior convictions were committed by Mendoza. We overrule Mendoza's fifth issue.

In his fourth issue, Mendoza argues that the jury charge contained fundamental constitutional error because it did not define "legally" married despite there being "some evidence that [Mendoza] and [B.A.] were married to each other."

B.A. was asked whether she was married to Mendoza, and she answered, "I don't think I was." She said she had been "married" to people in the chat room where she met Mendoza and explained, "The people I'm married to, I was in somewhat of a relationship to. So we just got married on there." She also testified that the "married" designation is "basically saying you're in a relationship on line." She initially said she was "not sure" if she had entered into a formal marriage

6

with Mendoza, but when the prosecutor explained that she was asking whether B.A. and Mendoza had gone before a judge or otherwise done something to become legally married, she said they were not married. She agreed with the statement that "the whole married thing is kind of basically saying you're in a relationship on line," and said, "Getting married on there isn't the same as actually getting married. To me it's just for fun."

A thirteen-year-old child designating herself as "married" in an online chat room, which she took to mean as indicating she was "in a relationship on line," does not amount in any form to evidence that she was in fact married to Mendoza. B.A. testified she was not married to him, and there was no indication in the record that Mendoza, a thirty-two-year-old man, was somehow misled into believing B.A. was his spouse. We overrule issue number four.

Finally, in his sixth issue, Mendoza argues that the "proof fail[s] on mens rea" because a "rational jury could not have found 'not the spouse of the defendant' beyond a reasonable doubt" in light of the so-called "uncontradicted" "evidence" that Mendoza and B.A. were married. Pursuant to our discussion immediately above, we overrule Mendoza's sixth issue on appeal.

We affirm the trial court's judgments of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: May 24, 2013

Do Not Publish

7